## VARGAS v. ESQUIRE, Inc.

### No. 9359.

Circuit Court of Appeals, Seventh Circuit.

Dec. 5, 1947.

Earle E. Ewins and Edward S. Price, of Chicago, Ill. (Musgrave, Ewins, Price & ·Notz, of Chicago, Ill., of counsel) for appellant.

Edward R. Johnston, James A. Sprowl and Allen R. Johnston, all of Chicago, Ill. (Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., of counsel) for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from an order, entered December 17, 1946, dismissing plaintiff's complaint and supplemental complaint for failure to state a cause of action.

Plaintiff, an artist, sued to enjoin the reproduction of certain pictures made by him and delivered to defendant, a publisher, upon the ground that the same were wrongfully used in that they were published without the signature of plaintiff and without being accredited to him. Plaintiff also sued for damages on account of such publication alleged to violate his contract and his property right in the pictures and unfairly to represent them as the work of others. Defendant moved to dismiss on the ground that the plaintiff at the time of publication had no property right in the pictures and no right to control or to direct their disposition.

The facts alleged by the complaint center about and relate largely to two contracts of which the plaintiff and defendant were parties. The complaint sets forth that in June, 1940, the parties entered into a contract, "Exhibit A," attached to and made a part of the complaint, wherein and whereby plaintiff was employed as an artist for three years, to produce art work for use by defendant in its publication and also for use in publications of a. commercial nature, for a certain monthly compensation and in addition thereto a certain percent of the proceeds realized by defendant for work of a commercial nature. Under this contract plaintiff made and delivered certain pictures, one of which was reproduced each month, beginning October 1, 1940, in the magazine Esquire, published by defendant. Plaintiff also made and delivered twelve pictures each year, beginning in the fall of 1940, for a calendar published and sold the following year by defendant.

At first the pictures furnished bore plaintiff's name or signature, "Vargas," and

.they were reproduced and published with his name thereon. Later, by agreement of the parties, the name "Vargas" was changed to "Varga." Thereafter, the pictures made by plaintiff and published by defendant were called "Varga Girls," and the name of the plaintiff appearing thereon was "A. Varga." The name was used only in connection with pictures made by plaintiff and was thus used by the defendant until March 1, 1946. No name was on the pictures when they were furnished by plaintiff to the defendant.

The contract "Exhibit A," expired on June 30, 1943, but plaintiff continued to furnish pictures to defendant without a contract, which were published in the same manner as when the contract was in force, until May 25, 1945, when the parties entered into a second contract, "Exhibit B," attached to and made a part of the complaint.

On or about January 14, 1946, plaintiff notified the defendant that he was no longer bound by the contract, "Exhibit B," and refused to longer furnish it with pictures. Defendant at that time had twenty pictures made by plaintiff which had not as yet been published. On February 11, 1946, plaintiff caused to be instituted in the United States District Court an action by which he sought a cancellation of such contract. On May 20, 1946, the court entered its decree, allowing the relief sought by the plaintiff, finding among other things that the contract had been fraudulently obtained by defendant and ordering the same cancelled and set aside as of January 10, 1946.

It was alleged that by reason of such publication by the defendant persons seeing said magazine came to know the work of the plaintiff and that as a result plaintiff became known to millions of persons, acquired a world-wide reputation and his name, "A. Varga," likewise became known throughout the world.

The complaint alleged that on March 1, 1946, the defendant published its magazine, Esquire, which contained a two-page reproduction of a picture made by the plaintiff. At the top thereof instead of the words, "The Varga Girl," appeared the words, "The Esquire Girl." The reproduction did not bear plaintiff's signature, "A. Varga,"

or any other signature. The supplemental complaint made a similar allegation as to a picture produced by plaintiff appearing in Esquire for the month of May, 1946. It was also alleged in the supplemental complaint that on October 1, 1946, defendant published a certain calendar enclosed in an outside envelope on which appeared the words and figures, "The 1947 Esquire Calendar 35¢ Copyright Esquire Inc. 1946 Printed in U. S. A." On the envelope was a reproduction of a picture painted for defendant by plaintiff. The calendar contained in said envelope was composed of the reproduction of twelve pictures of plaintiff made and intended to be used for the Varga Esquire 1947 calendar. Each of the said pictures bore the words, "The Esquire Girl Calendar." None of such pictures carried plaintiff's name or any name, word or legend indicating them to be the work of plaintiff or any other person.

All the pictures used by the defendant both in its magazine and in connection with its 1947 calendar were furnished by plaintiff to the defendant in accordance with the terms of "Exhibit B," prior to the time that plaintiff gave notice of its cancellation. All of such pictures had been paid for by the defendant in accordance with the terms of the contract, and as to those used in defendant's magazine, plaintiff had no further monetary interest. As to those used in connection with defendant's calendar, plaintiff was entitled to a share of the proceeds derived from the sale thereof. There is no allegation, however, and no claim that defendant had refused to pay or is likely to refuse to pay to plaintiff his share of such proceeds.

It was further alleged that there was a duty upon the defendant to refrain from publishing reproductions of plaintiff's pictures without their bearing his signature and giving him due credit; that defendant, in violation of its duty in this respect, published plaintiff's work without using his name and without giving him credit therefor, and that the same constituted a misrepresentation in that it represented the pictures to be the work of another and not that of plaintiff.

"Exhibit A" (the first contract) expired long prior to the inception of the instant

controversy and we think it is of little consequence insofar as it affects the issues for decision. The rights of the parties must be determined from "Exhibit B" (the second contract), which was in effect at the time that plaintiff furnished the pictures to defendant which were reproduced by it subsequent to the time that plaintiff gave notice of cancellation of such contract.

In a preamble to "Exhibit B," it is stated that Vargas for approximately three years had been preparing and furnishing to Esquire drawings for use by Esquire in connection with its publications and other printed merchandise:

"In connection with certain of these drawings, the name 'Varga,' 'Varga Girl,' and similar names have been given national publicity by Esquire and have become well known to the public. Vargas acknowledges that the success of the drawings has been due primarily to the guidance which Esquire has given him and to the publicity given to them by Esquire's publications * * *."

The contract, after expressing the desire of the parties to enter into an agreement defining their mutual rights and. obligations, contains a paragraph around which this controversy revolves and which we think is determinative of the issues involved. It provides:

"Vargas agrees for a period of ten years and six months, beginning January 1, 1944, as an independent contractor, to supply Esquire with not less than twenty-six (26) drawings during each six-months' period. * * * *The drawings so furnished, and also the name 'Varga', 'Varga Girl,' 'Varga, Esq.,' and any and all other names, designs or material used in connection therewith, shall forever belong exclusively to Esquire, and Esquire shall have all rights with respect thereto, including (without limiting the generality of the foregoing) the right to use, lease, sell or otherwise dispose of the same as it shall see fit,* and all radio, motion picture and reprint rights. Esquire shall also have the right to copyright any of said drawings, names, designs or material or take any other action it shall deem advisable for the purpose of protecting its rights therein." (Emphasis ours.)

Plaintiff's principal contention is that the publication of the reproductions of paintings produced by him, without his name appearing thereon, without credit to him and without any name appearing thereon, violated an implied agreement that the defendant would not do so. Plaintiff concedes that the contract defines defendant's rights in the pictures, but in his brief argues "that despite its broad generality, despite the fact that the defendant took all rights in the pictures, it is bound by the. implied agreement not to publish them in the manner complained of."

Plaintiff cites and relies upon a number of cases in support of this alleged implied agreement. Uproar Co. v. National Broadcasting Co., 1 Cir., 81 F.2d 373; Kirke La Shelle Co. v. Armstrong Co., 263 N.Y. 79, 188 N.E. 163; Manners v. Morosco, 252 U.S. 317, 40 S.Ct. 335, 64 L.Ed 590. We have read these cases, and without attempting to discuss them in detail, we think they are inapplicable to the instant situation. In each of them an author signed a contract or license which conferred on the other party certain limited rights in a literary reproduction and reserved for the author the balance of the rights therein. The holding in each of these cases is to the effect that where certain of the rights to a literary composition were conferred and other rights retained, it would be implied that the author could not use the rights retained in such a way as to destroy or materially injure the rights conferred. Such a contractual situation is in marked contrast to that of the instant case where the plaintiff by plain and unambiguous language completely divested himself of every vestige of title and ownership of the pictures, as well as the right to their possession, control and use. The language by which the extent of the grant is to be measured, "shall forever belong exclusively to Esquire, and Esquire shall have all rights with respect thereto, including (without limiting the generality of the foregoing) the right to use, lease, sell or otherwise dispose of the same as it shall see fit," would appear to leave no room for a contention that any right, claim or interest in the pictures remained in the plaintiff after he had sold and delivered them to the defendant.

Not only did plaintiff by the contract divest himself of all title, claim and interest in such drawings and designs, but also in the names "Varga," "Varga Girl," "Varga Esquire," when used in connection therewith.

Of the many cases where it has been sought to engraft an implied condition upon the terms of a written instrument, we like the rule announced in Domeyer v. O'Connell, 364 Ill. 467, at page 470, 4 N.E. 2d 830, 832, 108 A.L.R. 476, where the language used is pertinent to the instant situation. The court stated:

"The rules concerning the construction of contracts are so well established as to require but brief attention. The object of construction is to ascertain the intention of the parties. * * * That intention is to be determined from the language used in the instrument and not from any surmises that the parties intended certain conditions which they failed to express. Where there is no ambiguity in the language used, from that, and that alone, may the intention of the parties be gathered. * * * An implied intention is one necessarily arising from language used or a situation created by such language. If such intention does not necessarily arise, it cannot be implied. On the other hand, absence of a provision from a contract is evidence of an intention to exclude such provision."

As already shown, we think there is no ambiguity in the granting language of the contract, nor can there be an implied intention from the language thus employed of an intention of the parties of any reservation of rights in the grantor. The parties had been dealing with each other for a number of years, and the fact that no reservation was contained in the contract strongly indicates that it was intentionally omitted. Such a reservation will not be presumed; it must be expressed and clearly imposed. Grant v. Kellogg Co., D.C., 58 F.Supp. 48, 51, affirmed 2 Cir., 154 F.2d 59.

Plaintiff advances another theory which needs little discussion. It is predicated upon the contention that there is a distinction between the economic rights of an author capable of assignment and what are called "moral rights" of the author, said to be those necessary for the protection of his honor and integrity. These so-called "moral rights," so we are informed, are recognized by the civil law of certain foreign countries. In support of this phase of his argument, plaintiff relies upon a work by Stephen P. Ladas entitled "The International Protection of Literary and Artistic Property" (page 575, et seq.). It appears, however, that the author's discussion relied upon by plaintiff relates to the law of foreign countries. As to the United States, Ladas in the same work states (page 802):

"The conception of 'moral rights' of authors so fully recognized and developed in the civil law countries has not yet received acceptance in the law of the United States. No such right is referred to by legislation, court decision or writers."

What plaintiff in reality seeks is a change in the law in this country to conform to that of certain other countries. We need not stop to inquire whether such a change, if desirable, is a matter for the legislative or judicial branch of the government; in any event, we are not disposed to make any new law in this respect.

Plaintiff's third and last contention is that the manner of reproduction by defendant of plaintiff's work was such as to constitute a misrepresentation and was unfair competition. The concurring opinion of Mr. Justice Holmes in International News Service v. Associated Press, 248 U.S. 215, 246, 247, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293; and Fisher v. Star Co., 231 N.Y. 414, 433, 132 N.E. 133, 136, 19 A.L.R. 937, are the only cases cited and relied upon as supporting this contention. We think that neither case affords any support for such theory. In both, the holding as to unfair competition rested on the premise that the defendants, without the consent or approval of the plaintiffs, had taken and used to their own advantage something in which the plaintiffs had a property right—more specifically, that the defendants had pirated or stolen plaintiff's property and used it in their business in competition with that of the plaintiffs. It is difficult to discern how there could be any pirating or unlawful taking of property in the instant

case in view of the rights (heretofore discussed) which the plaintiff by contract conferred upon the defendant.

Plaintiff argues that the use of "Esquire Girl" as a title for the pictures was a representation that the author was someone other than the plaintiff. We do not agree with this contention. The title used was the name of the well-known and widely circulated magazine in which they were published, and we think the public would readily recognize the word "Esquire" referred to such magazine and not to the name of an artist.

More than that, as already shown, it was provided in the contract that both the pictures and the name "shall forever belong exclusively to Esquire, and Esquire shall have all rights with respect thereto, including * * the right to use * * or otherwise dispose of the same as it shall see fit." This was the basis both upon which plaintiff was paid for his pictures and upon which Esquire acquired their possession and ownership. Under these circumstances, we are of the view that there was no unfair competition by the defendant in the manner of their use.

The order appealed from is affirmed.