Joanne POLLARA, Plaintiff,

v.

Joseph J. SEYMOUR and Thomas
E. Casey, Defendants.

No. 99–CV–923.

United States District Court,
N.D. New York.

July 18, 2001.

Cohen Dax & Koenig, P.C., Albany, NY (Paul C. Rapp, of counsel), for plaintiff.

Hon. Eliot Spitzer, Attorney General of the State of New York, Department of Law, Albany, NY (Charles J. Quackenbush, Asst. Attorney General, of counsel), for defendants.

## AMENDED OPINION MEMORANDUM—DECISION AND ORDER

HURD, District Judge.

### I. *INTRODUCTION*

On June 14, 1999, plaintiff Joanne Pollara ("Pollara") commenced the instant action against defendants Joseph J. Seymour ("Seymour") and Thomas E. Casey ("Casey") (collectively, "defendants") pursuant to the Visual Artists Rights Act, 17 U.S.C. § 106A, and 42 U.S.C. § 1983. Defendants answered the complaint on July 9, 1999.

Defendants now move for summary judgment on all claims pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes. Oral argument was heard on February 23, 2001, in Albany, New York. Decision was reserved.

### II. *FACTS*

This action arises from the destruction of a painting created by plaintiff and displayed, without a permit, at the Empire State Plaza ("ESP"). The following are the facts pertinent to this motion as stated in the light most favorable to the nonmoving plaintiff.

Plaintiff is an artist in Albany, New York. She frequently paints for hire, and has often been asked to create large works of art for various groups in the Albany area. As with previous years, Pollara was hired by a public interest group, the Gideon Coalition,[1] to create the painting to protest funding cuts for legal aid which the Coalition feared would result in a denial of the right to counsel for the poor. This painting was to be displayed at ESP as part of the Gideon Coalition's annual lob-

---

1. The Gideon Coalition derives its name from the Supreme Court case *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in which the Court held that the right to competent counsel was a fundamental constitutional right. The Coalition lobbies on behalf of groups that provide legal services to the indigent in New York.

bying effort at the New York State Capital in Albany. She created a 10–foot by 30–foot mural which depicted stylized figures standing in line outside closed doors to legal offices. The mural also contained the phrases "Executive Budget Threatens the Right To Counsel" and "Preserve the Right To Counsel, Now More Than Ever."

The mural was created on a long sheet of paper, and was designed to be displayed by being affixed to a large metal frame. Pollara installed the painting at ESP without a permit, but with the assumption that the Gideon Coalition had obtained the necessary permission for her to do so. During the evening after she installed the mural, but before it had been viewed by the public, it was removed from its frame by ESP employees. It was torn and severely damaged in the process.

Casey is the Plaza Manager at ESP for the New York State Office of General Services ("OGS"). Seymour is the Commissioner of OGS.[2] Casey was responsible for ordering and supervising the removal of Pollara's painting by ESP employees. Both Casey and one of his subordinates, Joseph Keyser ("Keyser"), testified at deposition that Casey instructed Keyser to remove the mural without damaging it, but that Keyser expressed doubt as to whether it could be removed without ripping it. (Pl.Mem. at 9.) Defendants claim that the mural ripped accidentally as it was being removed from the steel support poles to which it was affixed.

Plaintiff disputes this version of events. Based on her experience erecting and removing murals of this type, she asserts that, if the damage occurred as defendants claim, the rips in the mural would have been diagonal rather than vertical (as they were). She alleges that the three vertical rips in the mural are indicative of intentional tearing of the mural from its frame, and that such tearing would not occur from a careful attempt to remove the mural without damaging it.

In addition, Pollara alleges that, when she returned to ESP the next day, she found the mural torn and crumpled in a corner of Casey's office. Defendants dispute this allegation, and claim that the mural was carefully rolled and stored for plaintiff's retrieval. For purposes of the instant motion, it is plaintiff's version of the facts which must control.

Based on the foregoing, Pollara commenced the instant action pursuant to the Visual Artists Rights Act ("VARA"), which provides artists with the right "to prevent any [intentional or grossly negligent] destruction of a work of recognized stature." 17 U.S.C. § 106A(a)(3)(b).[3]

## III. STANDARD OF REVIEW

### A. Summary Judgment

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could

---

**2.** Plaintiff has failed to allege any personal involvement of Seymour in the conduct at issue in this case.

**3.** Plaintiff originally claimed that the removal and destruction of the mural was based upon its content, in violation of her First Amendment rights. She now has abandoned this theory. *See* Plaintiff's Opposition at 18. It is also noted that plaintiff's demand for punitive damages was limited to her First Amendment claim, and she seeks no compensatory damages. Accordingly, her First Amendment claim and her demand for punitive damages must both be dismissed.

find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

## IV. *DISCUSSION*

Defendants contend that they are entitled to summary judgment on the grounds that (1) Pollara illegally placed the painting at ESP without a permit[4]; (2) the painting at issue could not be a "work of recognized stature" because it had never been publicly displayed; and (3) they are entitled to qualified immunity for their actions. Substantial questions of material fact preclude a grant of summary judgment in this case, and accordingly, defendants' motion must be denied as to Casey.[5]

### A. *Work of Recognized Stature*

The threshold question on this motion is whether or not VARA applies to the instant case. Defendants contend that it does not because, by its terms, VARA only prohibits the destruction of a "work of recognized stature."[6] Defendants assert that plaintiff's mural could not be such a work because it had never been publicly viewed; therefore, it could not have attained "recognized stature." Plaintiff argues against this limited view of VARA's reach, and proffers two affidavits from Albany art experts to demonstrate that her work has "stature" within the relevant arts community.[7]

4. Defendants argue that VARA does not protect works that are illegally placed on the property of others without their consent, citing *English v. CFC&R East 11th Street LLC*, 1997 WL 746444 (S.D.N.Y.1997) (murals painted on exterior walls of building without consent of owner). This argument is misplaced because *English* is limited to the situation where the artwork cannot be removed without destroying it. There is little, if any, dispute that it was possible to remove Pollara's painting from its frame without damaging it. Moreover, there is no basis in the statute to find a general right to destroy works of art that are on property without the permission of the owner. Accordingly, defendants' arguments based on the failure to obtain a permit are rejected.

5. However, as noted above, because there is no evidence of any personal involvement on the part of Seymour in the events at issue or any other basis for liability, the complaint must be dismissed against him.

6. Section 106A(a)(3)(B) provides as follows: "[T]he author of a work of visual art, subject to the limitations set forth in section 113(d) [dealing with works incorporated into buildings that cannot be removed without destruction], shall have the right to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right." 17 U.S.C. § 106A(a)(3)(B)

7. Because this decision is limited to the question of whether or not the fact that Pollara's painting had never been publicly displayed precludes it from being a work of "recognized stature" within the meaning of Section 106A, it is not now decided whether or not the painting is, *in fact*, a work of "recognized stature." The resolution of this question is

■ The term "work of recognized stature" is not defined by the statute. Accordingly, to the limited extent courts have considered the meaning of this term, they have focused on (1) whether "the visual art in question has 'stature,' i.e. is viewed as meritorious"; and (2) whether "this stature is 'recognized' by art experts, other members of the artistic community, or by some cross-section of society." *Carter v. Helmsley–Spear, Inc.,* 861 F.Supp. 303, 325 (S.D.N.Y.1994). In interpreting the second prong of this test, defendants argue that it is necessary that the work's stature be recognized at the time of its destruction.

■ However, a careful review of the purposes underlying VARA's protection of artistic works from destruction reveals that prior recognition should not be a necessary precondition to the existence of a cause of action under VARA. VARA, as well as numerous state moral rights statutes, recognize two concurrent policies underlying the grant of such rights to an artist. These are (1) the society's interest in the preservation of works of artistic merit; and (2) the artist's economic self-interest in preservation of his or her own works so as to enhance his or her reputation as an artist. *See* Note, Christopher J.

Robinson, The "Recognized Stature" Standard In the Visual Artists Rights Act, 68 Fordham L.Rev.1935, 1941–42 (2000). Neither of these policies is offended by a liberal reading of the statute, and in fact, both are served by the construction proposed by plaintiff.

■ As to the first policy, while it is true that prior recognition of a work as being of artistic merit is, perhaps, the most conclusive basis for finding that a particular work falls within the class of "works of recognized stature" protected by VARA, it is also true that a work's stature could be "recognized" by experts after the destruction of the work. This is particularly true where, as here, the artist has demonstrated that she has an established reputation in the relevant community. *See Lubner v. City of Los Angeles,* 45 Cal.App.4th 525, 53 Cal.Rptr.2d 24, 29 (1996) (assuming that undocumented destroyed works of recognized artists included works of recognized stature under VARA). In such a case, VARA's preservative purpose is served whether or not the art work has been previously displayed or its relative merits previously debated.[8]

In addition, an artist's interest in the product of his or her labor is no less significant prior to its public display. The

---

reserved for trial, at which time expert testimony will be received on this issue.

**8.** Construing VARA in the manner urged by plaintiff also resolves what would otherwise be an anomalous result. It is noted that one of the primary motivations for the adoption of VARA was public outcry over a scheme where a painting by Picasso was cut up into postage stamp size pieces which were then offered for sale. *See* 136 Cong.Rec. H3111–02, H3115 (daily ed. June 5, 1990) (statement of Rep. Markey). There is no less of a societal interest in preventing the destruction of its cultural treasures solely because the art has not been previously displayed. As Pollara argues in her opposition, permitting someone to find and destroy an "unknown Matisse" without

recourse under VARA simply because it had not been previously displayed would be "an absurd standard, and would insulate those who destroy artwork prior to any public display from liability." (Pl.Mem. at 14 & n. 6.) Clearly, the same societal interests are present whether or not the work to be protected has had the benefit of public display. The public outcry described by Rep. Markey would have been no less substantial had the Picasso which was destroyed been an undiscovered masterpiece instead of a well-known work. To accept defendants' view of the statute would fail to recognize the significant societal interest in the preservation of great art.

investment of time, effort, and creativity is no less substantial, and the value of the product to the artist's collective body of work no less significant, merely because the work is newly completed or not yet exhibited. It would defy logic to read the phrase "work of recognized stature" in such a way as to ignore the substantial interests which accrue upon the *creation* of a work of art.

■ Because a contrary interpretation would not advance the policies underlying the statute, it is held that Pollara's painting is not excluded from the statutory definition of "work of recognized stature" merely because it has not previously been exhibited to art critics or the general public. Moreover, based on the affidavits of art experts which she has submitted in opposition to the instant motion, she has raised genuine issues of material fact as to whether her painting constituted a "work of recognized stature" within the meaning of Section 106A.

### B. *Qualified Immunity*

■ Defendants also argue that even if Pollara's painting constituted a "work of recognized stature" under VARA, they are nevertheless entitled to immunity from damages because their conduct was "objectively reasonable." Because defendant Casey's conduct would not be "objectively reasonable" under plaintiff's version of events, qualified immunity is not appropriate in this case.

Defendants' argument is essentially that because it was not clearly established that Pollara's mural was a "work of recognized stature" under VARA, such that intentionally destroying it would violate her rights under the statute, the conduct in this case violated no clearly established right. They also argue that it was objectively reasonable for Casey to order the mural destruction because of safety concerns, and also that he could not have known that ordering the destruction of a large paper mural could subject him to liability under VARA. These arguments are not availing.

First of all, the "clearly established right" at issue was the right of Pollara to not have a "work of recognized stature" intentionally destroyed. This right is clearly established under the plain language of VARA. A reading of this language reveals no intent on the part of Congress to require that a destroyer know that the art being destroyed is of "recognized stature," and to read such an intent into VARA would reward a defendant who intentionally maintains ignorance as to the nature of the destroyed work. The protections of the statute would be rendered illusory if they could be avoided merely by pleading ignorance on the part of a defendant. It would also place a plaintiff in a VARA action in the undesirable and perhaps impossible position of having to prove a defendant's knowledge. Accordingly, it is held that the defendant's knowledge as to whether the destroyed painting was a work of recognized stature is not relevant to plaintiff's claim and provides no basis to avoid liability.

As to the claim of objective reasonableness, plaintiff's theory in this case is that Casey, or someone acting at his direction, intentionally ripped down and destroyed her painting. If this is so, then it simply cannot be said that it was objectively reasonable to believe that this course of conduct was proper. Casey admittedly admired the painting and knew that there was a possibility it might be reinstalled. (Def.Rule 7.1(A)(3) Statement ¶ 33.) Accepting plaintiff's view that the painting

was intentionally torn and crumpled by ESP employees, it cannot be said that it was reasonable for Casey to order the destruction of a painting which he knew to be the product of artistic labor, and which he also knew might be permitted to be reinstalled the following day. Therefore, defendants' claim of qualified immunity is rejected.[9]

## V. CONCLUSION

■ Plaintiff has demonstrated, for purposes of surviving the instant motion for summary judgment, both that substantial questions of fact remain as to whether her painting is a "work of recognized stature" within the meaning of 17 U.S.C. § 106A(a)(3)(b), and whether her mural was intentionally destroyed, or destroyed through the gross negligence of Casey. However, plaintiff has failed to adduce any evidence that would support a cause of action against Seymour. Further, her First Amendment claim for punitive damages has been abandoned.[10] Therefore, it is hereby

ORDERED that

1. Defendants' motion is GRANTED in part and DENIED in part;

2. Defendant's motion is GRANTED as follows:

a. The complaint is DISMISSED against defendant Joseph J. Seymour;

b. The First Amendment and punitive damages claim in the complaint are DISMISSED;

3. Defendants' motion is DENIED with respect to the VARA claim against defendant Thomas E. Casey; and

4. Plaintiff's demand for a jury trial is DENIED.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

**9.** Of course, if the trial findings of fact are that the mural is not a "work of recognized stature" within the meaning of VARA, *or* that Casey did not intentionally or with gross negligence destroy the mural, he would not be liable for statutory damages.

**10.** A final point which was not raised by either party merits brief mention. As noted above, Pollara seeks no compensatory or punitive damages. Instead, she seeks only statutory damages for the unlawful destruction of her painting pursuant to 17 U.S.C. § 504. Because the rights afforded under VARA are not analogous to the rights historically protected by a copyright action, the Supreme Court case of *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279,

140 L.Ed.2d 438 (1998), is not controlling. Moreover, because VARA provides for the right to prevent conduct and for the right of restitution when art is destroyed in violation of the statute, it is held that the rights protected and remedies provided under VARA are equitable in nature, and the Seventh Amendment does not require a trial by jury in this case. Where, as here, a plaintiff seeks statutory damages to enforce only equitable rights and obtain only the equitable remedy of restitution, it has been held that there is no right to a trial by jury. *See Joe Hand Promotions, Inc. v. Nekos*, 18 F.Supp.2d 214, 217 (N.D.N.Y.1998). Accordingly, Pollara's demand for a jury trial must be denied. The trial in this matter will be a bench trial.