Joanne POLLARA, Plaintiff–Appellant,

v.

Joseph J. SEYMOUR and Thomas E. Casey, Defendants–Appellees,

John Does, Defendant.

Docket No. 02–7733.

United States Court of Appeals, Second Circuit.

Argued: Feb. 5, 2003.

Decided: Sept. 19, 2003.

Paul C. Rapp, Cohen, Dax & Koenig, P.C., Albany, NY, for Plaintiff–Appellant.

Andrea Oser, Assistant Solicitor General, Office of the Attorney General of the State of New York (Eliot Spitzer, Attorney General, Daniel Smirlock, Deputy Solicitor General, on the brief), Albany, NY, for Defendants–Appellees.

Before: JACOBS and POOLER, Circuit Judges, and GLEESON,* District Judge.

District Judge GLEESON, concurs in result and files a separate opinion.

JACOBS, Circuit Judge.

Joanne Pollara appeals from a final judgment entered in the United States District Court for the Northern District of New York (Hurd, *J.*) dismissing her suit, under the Visual Artists Rights Act ("VARA" or the "Act"), 17 U.S.C. § 101 *et seq.*, alleging that defendant Thomas E. Casey unlawfully damaged and destroyed a work of art that she created. In relevant part, VARA secures an author's lifetime right to protect against "intentional distortion, mutilation, or other modification" of a "work of visual art" and against "any [intentional or grossly negligent] destruction of a work of [visual art having] recognized stature," 17 U.S.C. §§ 106A(a)(3), (d)(3); but VARA provides that a "work of visual art does not include"

---

* The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation.

(*inter alia*) posters, advertising or promotional materials, or any work made for hire. *Id.* § 101. The district court found, after a bench trial, that Pollara's work constituted advertising or promotional material. *Pollara v. Seymour ("Pollara II"),* 206 F.Supp.2d 333, 337 (N.D.N.Y.2002). On appeal, Pollara argues principally that she was entitled to a trial by jury and that, in any event, the district court erred in its ruling.

We affirm as a matter of law the ruling that Pollara's work was not a "work of visual art" subject to protection under VARA. We therefore do not decide whether a VARA plaintiff is entitled to a jury trial to resolve a genuine issue of material fact.

I

Since we decide in this appeal that judgment as a matter of law is appropriate notwithstanding the propriety of holding a bench trial, the few disputed material facts are recounted in the light most favorable to Pollara. *Cf. Nadel v. Isaksson,* 321 F.3d 266, 272 (2d Cir.2003) (recounting standard for granting motion for judgment as a matter of law).

Pollara is a professional artist in Albany, New York, who is frequently commissioned to create large painted banners and installations for use at events such as bar mitzvahs, corporate gatherings, and private parties. The work at issue in this case was created for the Gideon Coalition ("Gideon"), a non-profit group that provides legal services to the poor. (The name is derived from *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).) In 1999, Gideon arranged to set up an information table in Empire State Plaza, a public space in downtown Albany that is surrounded by a complex of New York State government office buildings. The information table was planned as part of Gideon's annual one-day legislative effort known as Lobbying Day. Gideon paid Pollara $1800 to paint a banner, approximately ten feet high and thirty feet long, which was to be erected as a backdrop to the table. Pollara worked more than 100 hours, applying latex paint to heavy-gauge photographer's paper that was reinforced along its edges by duct tape.

The completed banner, in three or four colors, depicts a tableau of two dozen stylized people, with few salient features, standing on line against a background of shut doors labeled "PUBLIC DEFENDER," "LEGAL AID," and "PRISONERS LEGAL SERVICES." They patiently await entry, at left, of an open door marked "LAWYER," inside which sits a person, wearing a jacket and tie. The person sits behind a brown desk, beside which is a trash can. Many of the people on line are depicted to suggest different ethnicities, possible immigrant status, youth and age, and both sexes—one person carries an infant and two have children in tow; the rest are in silhouette. Many are holding rectangles of paper, evidently summonses, correspondence, and the like. Large lettering across the top and left read: "EXECUTIVE BUDGET THREATENS RIGHT TO COUNSEL" and "PRESERVE THE RIGHT TO COUNSEL—NOW MORE THAN EVER!"

Pollara and several helpers erected the banner in Empire State Plaza on March 15, 1999, the evening before Lobbying Day was scheduled to begin. The banner was taped to two ten-foot-high steel supporting poles that were connected by a steel crossbar and anchored with twelve-inch square bases held down by sandbags. After the installation, the banner was left unattended in the plaza. Through no fault of Pollara's and without her knowledge, Gideon

had failed to obtain a valid permit for Pollara to erect the banner or leave it there overnight.

Defendant Thomas E. Casey is employed by the State's Office of General Services ("OGS") as manager of Empire State Plaza. A supervisor advised Casey by phone at around nine that evening that some kind of banner or poster had been erected at the plaza, and directed Casey to investigate. Casey went there, made inquiry, and ordered several OGS employees to remove the banner. During removal, it was torn vertically into three pieces.

Pollara learned by phone the following morning that the banner had been removed. She went to the plaza, saw that the banner was gone, and later saw it lying torn and crumpled in a corner of Casey's office.

On June 14, 1999, Pollara sued Casey and Joseph J. Seymour (who was the Commissioner of OGS and Casey's ultimate supervisor, although not the same supervisor who had contacted Casey by phone). Pollara's complaint asserted claims under VARA, as well as under 42 U.S.C. § 1983 (for the violation of her First Amendment rights). The VARA claims alleged that Casey and Seymour acted deliberately, willfully, wantonly, intentionally, and/or with gross negligence in mutilating and destroying the banner. After discovery, Pollara dropped her First Amendment claim, and both defendants moved for summary judgment on the VARA claims. *See Pollara v. Seymour ("Pollara I")*, 150 F.Supp.2d 393, 394–95 & n. 3 (N.D.N.Y. 2001). The district court granted defendant Seymour's motion for summary judgment

on the ground that Pollara had failed to allege any personal involvement by Seymour. *Id.* at 396 & n. 5. Pollara has not appealed from this ruling.

Casey's motion for summary judgment was denied on the ground that substantial questions of fact remained as to whether he had destroyed the banner through intentional or grossly negligent acts. *Id.* at 399. The court also held *sua sponte* that while a trial was required to resolve the disputed facts, Pollara was not entitled to have her claim tried before a jury because her suit sought only statutory damages and was thus essentially equitable in nature. *Id.* at 399 n. 10; *see also* 17 U.S.C. § 504(c)(1) (allowing recovery of statutory damages "instead of actual damages and profits"); *Martin v. City of Indianapolis*, 192 F.3d 608, 610 (7th Cir.1999) (affirming recovery of statutory damages under VARA).

After a bench trial, the district court entered judgment for Casey, ruling (*inter alia*) that the banner was not a "work of visual art" subject to protection under VARA because it constituted advertising or promotional material, categories expressly excluded from VARA's sweep. *See Pollara II*, 206 F.Supp.2d at 335, 337–38. The court cited dictionary definitions of "advertising" as "the act of attracting attention to a product or business," and "promotion" as "advertising or other publicity," *id.* at 337 (citing *American Heritage Dictionary*), and held that because the "purpose of the [banner] was to attract public attention and publicity to the [Gideon] information table," the banner was not a "work of visual art," *id.*[1]

---

1. The district court rejected an alternative argument that Pollara's banner was outside VARA's reach because it was a "poster." *Pollara II*, 206 F.Supp.2d at 337 n. 8. The court reasoned that "poster" was defined in the American Heritage Dictionary as "a large

*printed* placard, bill, or announcement, often illustrated, posted to advertise or publicize something," whereas the banner was hand-painted rather than printed, and existed in a single copy. *Id.* (emphasis in original). Because we agree with the district court that the

The district court also ruled that the banner was not a "work of recognized stature," and suggested that this ruling was sufficient to support entry of judgment as a matter of law in favor of Casey. *See id.* at 337. The VARA subsection that affords rights against destruction of a work of visual art, 17 U.S.C. § 106A(a)(3)(B), is expressly limited in coverage to works of "recognized stature." However, the VARA subsection that affords rights against mutilation or modification, 17 U.S.C. § 106A(a)(3)(A), contains no such express limitation. Since Pollara invoked both subsections, the insufficient stature of her banner could not (as the district court suggested) serve as an independent ground for dismissal of all of her VARA claims. We need not consider this issue further, however, because we resolve the case on other grounds.

## II

As a threshold matter, Pollara argues that we should remand for a new trial before a jury. Pollara relies on *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998), which held that jury trials are required in certain suits for statutory damages under the Copyright Act, *id.* at 348. *Feltner* held that the Constitution affords a jury trial for claims involving traditional copyright violations, because the Seventh Amendment guarantees a jury in all "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Id.* at 348, 118 S.Ct. 1279 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42, 109 S.Ct. 2782,

106 L.Ed.2d 26 (1989)). It is an open question whether the Seventh Amendment affords a jury trial right in suits brought under VARA, which appear to lack any analog in common law. *See Carter v. Helmsley–Spear, Inc. ("Carter II")*, 71 F.3d 77, 82 (2d Cir.1995) (stating that the rights recognized in VARA "are of recent vintage in American jurisprudence" and that American courts have rejected "artists' attempts to inject them into U.S. law") (citing *Vargas v. Esquire, Inc.*, 164 F.2d 522, 526 (7th Cir.1947)).

We need not decide whether the Constitution protects the right to a jury trial for claims brought under VARA. *Cf. Feltner*, 523 U.S. at 345, 118 S.Ct. 1279 ("Before inquiring into the applicability of the Seventh Amendment, we must 'first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" (quoting *Tull v. United States*, 481 U.S. 412, 417 n. 3, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (alteration in original))). "We may, of course, affirm the judgment of the district court on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely." *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 610 (2d Cir. 1999) (quoting *Westport Bank & Trust Co. v. Geraghty*, 90 F.3d 661, 668 (2d Cir. 1996)) (internal quotation marks omitted). The record is sufficient to allow review of the district court's ruling that the banner was not a "work of visual art" subject to protection under VARA, and the claimed right to a jury trial is an issue mooted by our conclusion, as a matter of law, that Pollara failed to show that her work falls within the scope of VARA.

banner is advertising or promotional material, we do not consider whether it is also a

"poster."

## III

VARA was enacted in 1990 as an amendment to the Copyright Act, to provide for the protection of the so-called "moral rights" of certain artists. *See Carter v. Helmsley–Spear ("Carter I")*, 861 F.Supp. 303, 313 (S.D.N.Y.1994), *vacated in part, rev'd in part on other grounds, Carter II*, 71 F.3d 77 (2d Cir.1995). "[M]oral rights afford protection for the author's personal, non-economic interests in receiving attribution for her work, and in preserving the work in the form in which it was created, even after its sale or licensing." *Id.* (quoting Jane C. Ginsburg, *Copyright in the 101st Congress: Commentary on the Visual Artists Rights Act and the Architectural Works Copyright Protection Act of 1990*, 14 Colum.-VLA J.L. & Arts 477, 478 (1990)) (alteration in original). VARA provides that the author of a "work of visual art," "shall have the right," for life,

> (A) to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right, and
>
> (B) to prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is a violation of that right.

17 U.S.C. §§ 106A(a)(3), (A), (B), (d)(3).

Not every artist has rights under VARA, and not everything called "art" is protected by such rights. As the quoted text reflects, VARA confers rights only on artists who have produced works of "recognized stature," or whose "honor or reputation" is such that it would be prejudiced by the modification of a work. And VARA protects only things defined as "work[s] of visual art," *see id.* § 106A(a)—a definition that is "a critical underpinning of the limited scope of the [Act]." H.R.Rep. No. 101-514, at 1990 U.S.C.C.A.N. 6915, 6920–21; *see also id.* at 6919 (stating that the congressional debate "revealed a consensus that the bill's scope should be limited to certain carefully defined types of works and artists, and that if claims arising in other contexts are to be considered, they must be considered separately"); *id.* at 6921 (quoting Representative Edward Markey, cosponsor of the bill that became VARA, as stating that the "legislation covers only a very select group of artists").

Congress instructed courts to "use common sense and generally accepted standards of the artistic community in determining whether a particular work falls within the scope of the definition [of a 'work of visual art']," and explicitly stated that "whether a particular work falls within the definition should not depend on the medium or materials used." *Carter II*, 71 F.3d at 84 (quoting H.R. Rep 101–514, 101st Cong., reprinted at 1990 U.S.C.C.A.N. 6915, 6921). Protection of a work under VARA will often depend, as it does here, upon the work's objective and evident purpose. VARA does not protect advertising, promotional, or utilitarian works, and does not protect works for hire, regardless of their artistic merit, their medium, or their value to the artist or the market. *See* 17 U.S.C. § 101. VARA may protect a sculpture that looks like a piece of furniture, but it does not protect a piece of utilitarian furniture, whether or not it could arguably be called a sculpture. *See id.* Drawings and paintings are protected, but only if they do not advertise or promote. *Id.* Tellingly, only certain still photographs are protected, depending upon their intended use: Congress explicitly limited VARA's protection to works "intended for exhibition use only," as opposed to works intended for use in a publication or the photographer's photo album. *Id.* In

each case, VARA's protections are limited depending on the purpose of the work.[2]

The undisputed facts demonstrate that Pollara's banner falls outside the protections of the Act. The banner was created for the purpose of drawing attention to an information desk, as part of a lobbying effort, and the banner overtly promotes in word and picture a lobbying message. The banner was commissioned and paid for by Gideon, and Gideon determined in advance the banner's content, including its explicit textual message. Gideon's specification of content is insufficient on its own to make the banner a "work for hire," *see* 17 U.S.C. § 101(1) (defining a "work made for hire" for purposes of the Copyright Act as "a work prepared by an employee within the scope of his or her employment"); but the directions given by Gideon evidence the promotional and advertising purpose that bring the banner outside the scope of VARA. While Gideon's name did not appear on the banner, the banner's planned installation adjacent to Gideon's information table, and its explicit lobbying message leave no doubt as to the banner's purpose as promotional and advertising material for Gideon's lobbying effort.

Pollara argues that it is significant that the Banner was commissioned by a political advocacy organization, and that the banner had a political message. According to Pollara, the non-commercial nature of the banner distinguishes it from the sorts of commercial advertising materials that Congress intended to exclude from VARA's protections. Contrary to Pollara's position, however, the term "advertising" contains no such limitation. There is a lot of public interest advertising, including advertising for museums and art. There is political advertising. And "promotion" has an even broader exclusionary sweep. Congress chose to exclude from the scope of VARA all advertising and promotional materials, regardless of whether the thing being promoted or advertised was a commercial product or (as here) a particular advocacy group's lobbying efforts, and regardless of whether the work being used to promote or advertise might otherwise be called a painting, drawing, or sculpture.[3] The banner in this case was created for the purpose of promoting and advertising, and we hold that it was therefore not a "work of visual art" subject to protection under VARA.[4]

2. VARA defines "work[s] of visual art" to include paintings and drawings, but the Oxford English Dictionary defines a painting as a "pictorial decoration," and a drawing as a "representation by lines." Congress could not have intended that every representation by lines (even if doodled on a napkin) or every image in paint would be protected from modification or destruction without the express consent of the person who made it. *Cf. Gegenhuber v. Hystopolis Productions, Inc.*, 1992 WL 168836, at *4 (N.D.Ill. July 13, 1992) (holding that failure to explicitly exclude puppets, costumes, or sets from protection as "work[s] of visual art" under VARA did not mean that such items were protected).

3. Pollara's brief also refers to the banner as a "mural." VARA's legislative history suggests that Congress viewed murals as a subset of

paintings. *See* H.R. Rep 101–514, 101st Cong., reprinted at 1990 U.S.C.C.A.N. 6915, 6921 ("[T]he term 'painting' includes murals, works created on canvas, and the like").

4. The concurring opinion takes issue with this holding on the ground that "a work originally created for the purpose of promoting an event, product or cause" may "over time, achieve the status of a work of recognized stature …." Concurring Opinion, *infra*, at [2]. That may be so, but VARA only protects works of recognized stature that are "work[s] of visual art," 17 U.S.C. §§ 106A(a)(3), (d)(3), and this term is defined to exclude promotional material, *see* 17 U.S.C. § 101. So even if (as the concurring opinion posits) promotional material achieves recognized stature over time, the promotional material would not thereby become a "work of visual art."

The district court politely found that the banner is "visually appealing and demonstrated a great deal of artistic ability and creativity," *Pollara II*, 206 F.Supp.2d at 335, but this finding, as the district court recognized, is beside the point. "It would be a dangerous undertaking for persons trained only in the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits." *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251, 23 S.Ct. 298, 47 L.Ed. 460 (1903). We steer clear of an interpretation of VARA that would require courts to assess either the worth of a purported work of visual art, or the worth of the purpose for which the work was created. Congress chose to protect in VARA only a narrow subset of the many different forms and types of what can be called art, and expressly left unprotected works created for the primary purpose of promoting or advertising. Having concluded that the banner is such a work, our task is done.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

GLEESON, District Judge, concurring.

I write separately because I would reach the same result as the majority, but for a different reason. Specifically, I would hold, as a matter of law, that Pollara's painting was not a work of recognized stature.

While the concept of "recognized stature" under VARA may give rise to some difficult cases, it seems clear that a work that has never been exhibited cannot, as a matter of law, be a work of recognized stature. The plain language of the provision suggests that the work must have attained a recognized stature by the time it is destroyed. As Professor Ginsburg has observed, "If a work has not been publicly displayed before its owner destroys it, how can the work be of 'recognized' stature?" Jane C. Ginsburg, *Copyright in the 101st Congress: Commentary on the Visual Artists Rights Act and the Architectural Works Copyright Protection Act of 1990*, 14 Colum.-VLA J.L. & Arts 477, 480 n. 19 (1990).

I respectfully disagree with the majority's ground for affirming—that Pollara's 300–square–foot mural was not, as a matter of law, a "work of visual art" within the meaning of 17 U.S.C. § 101. VARA excludes from "work of visual art" status any "promotional ... *material*." 17 U.S.C. § 101 (emphasis added). It does not state that all works that "promote" are not works of visual art. In short, I don't believe the exclusion supports the majority's statement that "Drawings and paintings are protected, but only if they do not advertise or promote." (Maj. Op. at 269.) That broad construction of the exclusion suggests that a painting commissioned to promote the Olympics, or a sculpture commissioned to promote AIDS awareness, could *never* receive protection under VARA. Also, there is nothing in the statute that makes the purpose for which a work was created, or the manner in which it is first exhibited, dispositive in determining whether the work is "promotional material" at the time it is destroyed. Specifically, there is nothing that suggests that a work originally created for the purpose of

Similarly, Frank Gehry's Guggenheim Museum in Bilbao is a work, and it has recognized stature as art, but it could not be made to fit within the statute's definition of a "work of visual art." Buildings (as opposed to their design) are not subject to protection under the Copyright Act, *id.* at § 120(b), and are therefore excluded from VARA, *id.* at § 101 (defining "work of visual art" to exclude "any work not subject to copyright protection").

promoting an event, product or cause could never, over time, achieve the status of a work of recognized stature, and thus be deserving of protection under VARA.

Accordingly, I believe that the promotional aspect of Pollara's mural creates, at most, a potential fact question as to whether the work was a "work of visual art" protected by VARA. That the impetus for the mural was to promote the Gideon Coalition's cause should no doubt be a factor in the determination whether the mural was merely promotional material. So should the fact that the Gideon Coalition supplied some text for the mural. The rest of the standard, *i.e.,* precisely how a factfinder should distinguish between a "work of visual art" and mere "promotional material," need not be decided here because the case can be so readily disposed of on other grounds.