Linda SCOTT, Plaintiff,

v.

**Peter DIXON and Candida Dixon Defendants**

No. CV 02–4654.

United States District Court, E.D. New York.

March 19, 2004.

Flower, Medalie & Markowitz, Esqs. by Donald Markowitz, Esq., Bay Shore, NY, for Plaintiff.

Wormser, Kiely, Galef & Jacobs LLP by Jennifer L. Marlborough, Esq. John T. Morin, Esq., New York City, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WEXLER, District Judge.

Plaintiff Linda Scott ("Plaintiff" or "Scott") commenced this action in her capacity as the author of a work of visual art, pursuant to the Visual Artists Rights Act, 17 U.S.C. § 106 (the "VARA"). Scott seeks damages on the theory that Defendants Peter and Candida Dixon ("Defendants" or the "Dixons") destroyed Scott's work of art, in violation of Plaintiff's rights under VARA.

A non-jury trial was held before this court on December 10 and 11, 2003. The parties have submitted proposed findings of fact, conclusions of law and legal memoranda. The court has considered those submissions and this constitutes the Court's findings of fact and conclusions of law.

## FINDINGS OF FACT

A. *The Parties*

1. Plaintiff Linda Scott is an individual residing in the State of New York, County of Suffolk.

2. Plaintiff has made her living as a professional artist and sculptor. Plaintiff testified vaguely as to galleries that have exhibited her work, but called no gallery owner to corroborate such testimony. Plaintiff submitted evidence showing that one of her paintings has appeared on the cover of the Journal of the American Medical Association ("JAMA"). The JAMA credit to that painting refers to Scott as a "contemporary American artist." (Exhibit 2). As discussed further below, Plaintiff has achieved a measure of local notoriety as an artist, in connection with her creation of a locally well-known sculpture known as "Stargazer Deer."

3. Defendants Peter and Candida Dixon are a married couple who, at all times relevant hereto, resided in the State of New York, County of Suffolk.

4. Peter Dixon owned real property and a home located at 316 Coopers Neck Lane in the Town of Southampton, New York. This property has been known as "Swan's Way" (the "Swan's Way Property").

5. Peter Dixon has been personally acquainted with Scott since both were children. Candida Dixon has been acquainted with Scott since the Dixons' marriage in 1959.

B. *Scott's Prior Artwork: "Stargazer Deer"*

6. Plaintiff is the artist who created a work of art known as "Stargazer Deer."

7. Stargazer Deer is a fifty-two foot tall sculpture constructed of red-painted plywood over steel, resembling a deer with antlers in its mouth.

8. Since 1991, Stargazer Deer has been located on a field near County Route 111 in Manorville, a town located in Suffolk County, New York.

9. As a result of its proximity to the road, Stargazer Deer is clearly visible to the public and, in particular, to motorists traveling on County Route 111.

C. *The Sculpture*

10. In 1991, the Dixons asked Scott to create a work of art for the back yard of the Swan's Way Property. The specific work of art that Scott was asked to create was a sculpture of a swan.

11. In response to the Dixon's request, Scott created a large sculpture of a swan

(the "Sculpture"). The Sculpture, fabricated out of steel, was approximately forty feet long and ten feet high and weighed approximately 6,000 pounds. When painted, the Sculpture was white.

12. The Sculpture was delivered to the Swan's Way Property in May of 1992. Because of its large size, the Sculpture was delivered to the Property on a flat bed truck and its final assembly took place on the Swan's Way Property.

13. The Sculpture was painted and maintained by the Dixons during the time it remained on the Swan's Way Property. It was painted as necessary by caretakers employed by the Dixons.

14. At all times prior to the sale of the Swan's Way Property, the Sculpture remained in the back yard of that property.

15. The Sculpture could be viewed when looking out of the back windows and doors of the house located on the Swan's Way Property.

16. The Swan's Way Property was, at all relevant times, surrounded by hedges approximately twelve feet in height. As a result of the placement of these hedges, the back yard of the Swan's Way Property was private.

17. The Sculpture was never clearly visible from the public street located outside of the Swan's Way Property.

D. *Plaintiff's Claimed Connection Between The Sculpture and Stargazer Deer*

18. Plaintiff testified at trial that the Sculpture was connected to her Stargazer Deer sculpture by describing the Sculpture as being a part of a "Stargazer Series."

19. Plaintiff submitted newspaper clippings that included references to Stargazer Deer and identified Plaintiff as the artist who created that sculpture. No newspaper clipping submitted by Plaintiff referred to the Sculpture as being a part of a "Stargazer Series" of works of art.

20. One newspaper article submitted by Plaintiff that refers to the Sculpture and the Dixon Home was an article entitled "Tales of a Beach Manor." The subject of this article was the Dixon home. This article refers to Plaintiff as "Linda Scott of Star Gazer fame," but makes no reference to a "Stargazer Series."

21. The single article submitted by Plaintiff that used the term "Stargazer Series," is a 1992 article that appeared in Newsday. (Plaintiff's Exhibit 14). This article describes the Sculpture and refers to Plaintiff's "sculptures *and* her Stargazer Series" (Plaintiff's Exhibit 14) (emphasis added). The article describes the Stargazer series as including "renditions of human heads gazing skyward ...." *Id.* The Dixons testified that Plaintiff never told them that the Sculpture was a part of the Stargazer Series.

22. Plaintiff testified that she did not recall whether she told the Dixons that the Sculpture was part of the Stargazer Series, but that "all of her pieces were part" of the series.

E. *The Sculpture Was Neither On Display Nor Open For Review By the Artistic Community*

23. The only witnesses called to testify on behalf of Plaintiff were Plaintiff and David Morris, an individual who assisted Plaintiff in the fabrication of the Sculpture. With the exception of the Plaintiff, who the court may have credited as an expert in the art field, Plaintiff called no expert witness to testify as to the artistic merit of the Sculpture.

24. Plaintiff did not call any expert witness to testify as to whether the Sculpture had ever been reviewed by any member of the artistic community. Instead, Plaintiff

testified that she was not aware of any artistic critique of the Sculpture.

25. The evidence presented did not prove that the Sculpture was ever open to view either by the general public or by any art critics.

26. The Dixons never opened their property to the public for the purpose of having the Sculpture viewed and/or reviewed.

27. The court finds that the Sculpture was never viewed by the general public and that the Sculpture was never reviewed by any art critics. The court further finds that if any members of the public viewed the Sculpture, that viewing was not as a result of the Sculpture being put on display by the Dixons. Instead, any such viewing was a result of the viewer peeking between the Dixons' hedges and/or the viewing of the Sculpture from an aerial view.

28. The court finds that while the newspaper clippings submitted by Plaintiff support the artistic merit and notoriety of Stargazer Deer, those articles do not support any claim of merit or notoriety of the Sculpture.

29. The court finds that the single article submitted by Plaintiff that was written about the Sculpture, was published after Plaintiff invited the reporters who wrote the article to view the Sculpture on the Swan's Way Property. The article contains no review of the artistic merit of the Sculpture.

F. *The Sale Of The Swan's Way Property*

30. At some point in 1999, Peter Dixon decided to sell the Swan's Way Property.

31. On or about March 25, 1999, Peter Dixon entered into a contract of sale to sell the Swan's Way Property to Sidney Kahn and Elizabeth McHugh Khan. A rider to the contract required that Dixon "shall remove large steel structure of swan in flight prior to closing."

32. Sidney Khan died prior to the closing of the sale of the Swan's Way Property. After the death of Mr. Khan, the contract of sale was assigned, unchanged, to Denise Rich, who ultimately purchased the property.

G. *The Removal Of The Sculpture From The Swan's Way Property*

33. Prior to the closing of the sale of the Swan's Way Property to Denise Rich, the Sculpture was removed from the property.

34. Peter Dixon testified that prior to removal of the Sculpture, he told Plaintiff of his plans to remove the Sculpture.

35. Plaintiff's testified that she was not told of the Dixons' intention to remove the Sculpture from the Swan's Way Property until after it was removed.

36. The Dixons arranged for the Sculpture to be dismantled and removed from the Swan's Way Property by a company known as "Rambo, Inc." ("Rambo"). Plaintiff describes Rambo as "a company that installs pilings and builds bulkheading." Defendants describe Rambo as a construction company.

37. Peter Dixon paid Rambo $5,400 to remove the Sculpture from the Swan's Way Property and to store the Sculpture at Rambo's Southampton facility for a period of three years.

38. Shortly after the Sculpture was removed from the Swan's Way Property, Peter Dixon's attorney corresponded with Mr. Dixon. That correspondence, dated July 28, 1999, states that the attorney had discussions with Plaintiff indicating that the Dixons would be willing to give the Sculpture to Plaintiff. The correspondence also refers to a "trucker on the North Fork who might be able to trans-

port the swan to another location on Long Island." Finally, the correspondence indicates that the Dixons would not be willing to absorb the cost of moving the Sculpture to a different location.

39. Peter Dixon testified that Plaintiff asked him to pay to move the Sculpture to a museum in New England and that he refused to pay for such a move.

### H. *The Condition of the Sculpture After Its Removal From The Swan's Way Property*

40. David Morris ("Morris") testified for the Plaintiff. Morris is in the construction business and has worked with artists on large scale sculptures similar to the Sculpture. Morris assisted Plaintiff in the engineering and fabrication of the Sculpture.

41. Morris viewed the Sculpture during the time that it was stored at the Rambo facility. Morris testified that the Sculpture was stored, uncovered, on the ground. As a result, the Sculpture became rusted and was covered in vines that grew over and around it. Morris also testified regarding the condition of the Sculpture when he visited the Rambo facility in 2002. As to that time period, Morris testified that the Sculpture had continued to rust and was corroded in many areas. He further testified that the Sculpture's steel had buckled and the Sculpture was bent.

42. Photographs taken of the Sculpture during the time it has been stored at the Rambo facility were placed in evidence before the court. These photographs corroborate the testimony of Morris regarding the rusting and corrosion of the Sculpture.

43. Morris testified that the level of rust and corrosion on the Sculpture makes it impossible to restore it to its original condition. In particular, Morris testified that the technique of power wire brushing would be ineffective because of the high level of deterioration. Morris also testified that it would be impossible to repair a bent wing without re-welding the Sculpture and creating a visible weld seam, not present in the original work of art. Morris further testified that it would be impossible to flatten out the Sculpture's steel to its original condition.

44. Carl Schwartz ("Schwartz"), a metallurgical engineer, testified for the Dixons and rendered his opinion as to the condition of the Sculpture and the possibility of restoring it to its original condition. While Schwartz has had experience in a variety of fields involving the use of steel, he has not worked with artists in this medium. He has neither assisted in the construction of works of art nor worked to restore any such works.

45. Schwartz observed and photographed the Sculpture at the Rambo facility.

46. Schwartz testified that because the Sculpture was made of molded carbon steel it was "weldable, so therefore it could be reassembled by welding." Schwartz further testified that the material is the type that can be formed, so that any deformations in the Sculpture could be "corrected through various metal working techniques."

47. Upon the court's review of the exhibits depicting the current condition of the Sculpture and upon weighing the credibility of the witnesses proffered by the parties to testify as to the condition of the Sculpture, and the possibility of its restoration, the court credits the testimony of Morris, plaintiff's witness, over that of Schwartz.

48. The court finds, as a matter of fact, that the Sculpture cannot be restored to its former condition as a work of art. The techniques referred to by Schwartz would not restore the Sculpture to the condition

it was in before it was removed from the Swan's Way Property.

## CONCLUSIONS OF LAW

A. *The Visual Artists Rights Act ("VARA")*

1. Plaintiff brings this case pursuant to the Visual Artists Rights Act, 17 U.S.C. § 106A(a)(3)(B) ("VARA"). VARA protects works of art as well as artists' reputations. VARA secures these "moral rights" and protects the right of an artist to preserve a work of art even after that work is sold. *Pollara v. Seymour,* 344 F.3d 265, 269 (2d Cir.2003).

2. The section of VARA that forms the basis for Plaintiff's claim gives an artist the right "to prevent any destruction of a work of *recognized stature.*" 17 U.S.C. § 106A(a)(3)(B) (emphasis added). Any intentional or grossly negligent destruction of such work is a violation of that right." 17 U.S.C. § 106A(a)(3)(B). Thus, where a particular work of art has achieved recognized stature, VARA gives the artist the right to prevent its destruction. *Carter v. Helmsley–Spear, Inc.,* 861 F.Supp. 303, 325 (S.D.N.Y.1994), *aff'd in part. rev'd in part and vacated on other grounds,* 71 F.3d 77 (2d Cir.1995).

3. To prevail on her VARA claim, Plaintiff must prove that: (1) the Sculpture is a "work of recognized stature," and (2) that the Defendants destroyed the Sculpture in an intentional or grossly negligent manner. 17 U.S.C. § 106A(a)(3)(B); *Carter,* 861 F.Supp. at 325.

4. Works of recognized stature, within the meaning of VARA, are those works of artistic merit that have been "recognized" by members of the artistic community and/or the general public. *Carter,* 861 F.Supp. at 325. To achieve VARA protection, an artist must show not only the work's artistic merit but also that it has been recognized as having such merit. *Id. Accord Phillips v. Pembroke Real Estate,*

*Inc.,* 288 F.Supp.2d 89, 97–98 (D.Mass. 2003); *Martin v. City of Indianapolis,* 982 F.Supp. 625, 631 (S.D.Ind.1997).

5. The stature of a work of art is generally established through expert testimony. *See Carter,* 861 F.Supp. at 325; *Phillips,* 288 F.Supp.2d at 98.

6. When determining whether a work of art is of recognized stature under VARA, it is not enough that works of art authored by the plaintiff, other than the work sought to be protected, have achieved such stature. Instead, it is the artwork that is the subject of the litigation that must have acquired this stature. *See Martin v. City of Indianapolis,* 982 F.Supp. at 631 (S.D.Ind.1997) (accepting articles and awards referring to the sculpture at issue in the litigation as evidence of that work's "recognized stature" under VARA).

7. While the court can imagine a set of circumstances where an artist's work is of such recognized stature that any work by that artist would be subject to VARA's protection, this is not such a case. For example, the court would be hard pressed to hold that a newly discovered Picasso is not within the scope of VARA simply because it has not been reviewed by experts in the art community. While Plaintiff has achieved some level of local notoriety, that stature is not so great as to afford VARA protection to each and every work she creates.

8. The court concludes that Plaintiff has not presented evidence showing that the Sculpture is a work of recognized stature within the meaning of VARA. *See Pollara,* 344 F.3d at 271 (Gleeson, J., concurring) (agreeing with dismissal of VARA claim on ground that "it seems clear that a work that has never been exhibited cannot, as a matter of law, be a work of recognized stature").

9. While the Sculpture may have had artistic merit, it was not a work of recognized stature within the meaning of VARA.

10. In view of the holding that the Sculpture was not a work of recognized stature under VARA, it was not protected by the section of VARA sued upon. Accordingly, Plaintiff's claim pursuant to 17 U.S.C. § § 106A(a)(3)(B) must be dismissed.

### CONCLUSION

1. The Clerk of the Court is directed to terminate any outstanding motions, enter judgment in favor of Defendants and to close the file in this case.

SO ORDERED.